(No. 18957.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRANK EPSTEIN, Plaintiff in Error.

*Opinion filed October 25, 1928.*

VAUGHN & NEVINS, for plaintiff in error.

OSCAR E. CARLSTROM, Attorney General, FRANK M. RAMEY, State's Attorney, and ROY D. JOHNSON, (LESTER K. VANDEVER, and ROY MARTIN, of counsel,) for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

The plaintiff in error, Frank Epstein, was indicted at the November term, 1926, of the circuit court of Montgomery county, together with Mike Fontilla, for obtaining from fifteen persons who were named in the indictment, "and divers other persons whose names are to the grand jurors unknown but who were then and there associated together as an unincorporated association consisting of over eight hundred men and associated together under the name of Local Union No. 1484 of sub-district No. 5 of district No. 12 of the United Mine Workers of America, by means and by use of the confidence game, their money in the sum of $250." A trial resulted in the acquittal of Fontilla and the conviction of Epstein, who has sued out a writ of error.

A motion was made to quash the indictment, which was overruled, and the first assignment of error made and argued is based upon the insufficiency of the charge as to the ownership of the money obtained. The language of the indictment has been quoted, and it charges the money obtained to have been the property of the persons composing the local union, over eight hundred in number, (*People* v. *Brander,* 244 Ill. 26,) alleging the names of fifteen of them and stating that the names of the other persons were unknown to the grand jurors. The object in naming the injured person in a criminal proceeding is to identify the transaction so that the accused may not be twice tried for the same offense. (*Little* v. *People,* 157 Ill. 153; *Willis* v. *People,* 1 Scam. 399.) The owner must be named and the ownership proved, and the substantial test is whether it is so al-

leged that an acquittal or conviction under the indictment can be pleaded in bar of a subsequent prosecution for the same offense. In an indictment for obtaining property by false pretenses the name of the owner of the property must be alleged. (*Thompson* v. *People,* 24 Ill. 61.) If the name of the owner of the property is unknown to the grand jury that fact should be averred in the indictment, (*State* v. *McChesney,* 90 Mo. 120; *State* v. *Lathrop,* 15 Vt. 279;) but if the name of the owner can be readily ascertained it must be inserted. (*State* v. *Stowe,* 132 Mo. 199.) The indictment in this case complies with these requirements. The allegation is sufficient to enable the defendant to know the particular crime with which he is charged and to prepare for his trial. The names of the owners of the money he is charged with having obtained are given, so far as known, and the fact that the names of other persons who were jointly interested as owners were not stated, because they were unknown to the grand jury, did not render the indictment bad.

The evidence of the prosecution tended to show that the Indiana-Illinois Coal Company operated a mine called Mine No. 10, near Nokomis, in Montgomery county. More than eight hundred miners employed at the mine constituted Local Union No. 1484. The plaintiff in error was a check weighman employed and paid by the local union. Each miner was given a check number, and when he loaded a car of coal he attached his check number to it. It was hauled to the top and was weighed there by the plaintiff in error and another weighman who was an employee of the company. When the car arrived at the top the plaintiff in error was required to ascertain the number of the loader and credit the car of coal to that number, and the company weighman also weighed the car. Sometimes a car would have no check number attached to it when it was received for weighing and credit. In such case, by agreement between the local union and the company, it was the duty of

the check weighman to ascertain who loaded the car and credit it to the proper person, if possible. If it could not be determined who was the loader, the amount due from the operating company for loading that particular car went to the fund of the local union which was set apart for the payment of the check weighman. Sometimes, also, a miner would ask and receive permission to attach the check number of another miner to cars loaded by him. This was usually done to avoid garnishee process and was usually done by an arrangement between two miners. The testimony shows that various miners found themselves at different times credited with more coal than they had loaded, and upon the attention of the plaintiff in error being called to these excessive credits, he advised that the credits be permitted to go through the pay-roll as made and after payment the excess could be paid to the miner entitled to receive it. He afterwards asked for the money received by the miner who had collected the amount in excess of what was due him, saying he would give it to the one who was entitled to receive it. There is no evidence as to whether he did so or not. There is therefore no evidence that the local union was entitled to the money which he received, because it was only in case of failure to learn who was the loader and was entitled to the money that the local union would become entitled to receive it. In this way he received from John Stalets $10 or $11, from Paul Zancho $14.80, from Steve Miller $10.60, from Steve Durda $14.40, from Ray Morell $7.07, from Joseph Parento $14, and on different occasions from George Grabovac sums amounting to $138.40, and from B. R. Donaldson a check for $24, which the plaintiff in error collected. In each case he informed the person by whom he was paid the money that he had learned who had loaded the coal and was entitled to payment for it, and that he would show the person who was entitled to payment to the person from whom he had received the money, but he always failed to do so, and finally

would ask the one having the money to give it to him and he would turn it over to the rightful owner. The miners who loaded the coal were entitled to the money upon identification, either by the check number or in some other satisfactory manner. There was no evidence showing that the money the plaintiff in error received was the money of the persons constituting the local union or to whom it did belong, and without proof that the money he received was the money of the persons constituting the local union the plaintiff in error could not properly be found guilty of the charge in the indictment.

The judgment is therefore reversed and the cause remanded. *Reversed and remanded.*